Cite as 2022 Ark. App. 176

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV-21-541

|  |  |
|---|---|
| | **Opinion Delivered** April 20, 2022 |
| SHANNON TATE | |
| APPELLANT | APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT |
| V. | [NO. 66FJV-18-321] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | HONORABLE SHANNON L. BLATT, JUDGE |
| APPELLEES | AFFIRMED |

## LARRY D. VAUGHT, Judge

Shannon Tate appeals the Sebastian County Circuit Court's order terminating her parental rights to her six minor children. On appeal, she challenges only the court's finding that termination of her parental rights was in her children's best interest. We affirm.

On or about August 10, 2018, police found Shannon walking down the side of Interstate 40 with her five children, then ages eight, seven, five, four, and one, after having been denied a hotel room. Upon further investigation, police discovered that Shannon had active warrants, and they arrested her, leaving the children without a caretaker. The Arkansas Department of Human Services (DHS) filed a petition for emergency custody and dependency-neglect, alleging that the children were at imminent risk of harm because Shannon was unable to provide basic necessities for them. An emergency hold was placed on the children, and the court entered an order granting DHS emergency custody.

The court held a probable-cause hearing and entered an order on August 13, finding that Shannon had waived probable cause and that the children would remain in foster care pending an adjudication hearing.

The adjudication hearing was held on September 17, and the court found the children dependent-neglected due to parental unfitness because Shannon had been arrested, leaving the children without a caretaker, and upon her release, she was without a residence to which she could return.

Shannon gave birth to another child while the case was pending, and on November 13, newborn J.L. was also removed from Shannon's custody. DHS filed a petition seeking to add J.L. to the case. Shannon was unable to provide a valid drug screen, she exhibited signs of drug use, J.L. exhibited signs of drug withdrawal, and an investigation of Shannon's home demonstrated that Shannon had no supplies for J.L. or a bed for herself. The court entered an emergency order allowing DHS to maintain custody of J.L., which was followed by a probable-cause order and an adjudication order adjudicating J.L. dependent-neglected as a result of Shannon's parental unfitness.

That order also served as a review order for the other children, and the court found that Shannon was not in compliance in that she had failed to participate in services except for visitation and admitted using drugs during the review period. The court ordered Shannon to comply with the court's orders and with the case plan and listed the multitude of services she was to be provided by DHS as well as expectations the court had of her. By separate order, the court also ordered her to pay child support of $30 a week for the eldest five children.

Although Jody Lewis is not a party to this appeal, we note that the court found him to be the legal father of K.L. and the putative father of A.L., L.L., B.L., and C.L. but noted that his rights had not yet attached to the newborn, J.L. He was not appropriate for placement because he was serving a four-year prison sentence.

On April 22, 2019, the court held a review hearing, finding that Shannon had a positive drug screen for amphetamines and methamphetamine three weeks prior and that she had not complied with the case plans or orders of the court. Specifically, the court found that she had not attended a drug-and-alcohol assessment, she continued to test positive for amphetamines, she missed multiple visits with the children, she continued to have unsatisfied legal obligations, she had not attended domestic-violence classes or parenting classes, and she did not have stable and appropriate housing or reliable transportation.

Three months later, however, after a permanency-planning hearing, the court maintained a goal of reunification. Shannon was making progress. The court then entered an order on December 17, finding that "the parents" were partially compliant, having worked their services—completing some of them—and they had benefited from those services. The court noted that they were "closer to being fit to receive the children than previously." A nearly identical order with identical findings was entered for the review period ending February 2020.

On May 11, 2020, the court held yet another review hearing and entered an order on June 9, finding that Shannon continued to be compliant with the court's orders and the case plan in that she had housing and employment but that she had experienced a relapse. The court ordered her to undergo a hair-follicle test and DHS to refer her to drug treatment. A

3

permanency-planning hearing conducted two months later resulted in an order in which the court found that the goal of the case should remain reunification. The court found Shannon not in compliance because DHS was unable to verify her circumstances and because the hair-follicle test was positive for methamphetamine. The court ordered her to undergo a second hair-follicle test covering only the previous ninety days and ordered DHS to refer Shannon to a drug-and-alcohol assessment.

The review period ending December 2020 resulted in an order showing Shannon to be in compliance. The court noted that Shannon was employed, she was visiting the children regularly, her classes and counseling were in progress, and she had had clean drug screens.

However, three months later, at the March 2021 review hearing, the court changed the goal to adoption, making an alternate plan of reunification and ordering that Shannon continue to receive services until her rights were terminated, "if ever." The court found that she was partially compliant but noted that while she was working, her housing was unstable, and she had not completed outpatient drug treatment.

On June 10, DHS filed a petition to terminate Shannon's parental rights alleging three grounds and contending that termination was in the children's best interest because they were likely to find permanency through adoption and because they would be subject to potential harm if returned to Shannon's custody.

On July 12, 2021, the court held a termination hearing. At that hearing, the caseworker, Mayra Duenas, testified that Shannon had completed parenting classes in 2019, had undergone a drug-and-alcohol assessment and completed two inpatient drug-treatment programs with the most recent being in November prior to the termination hearing, had appropriate

employment and income, had two two-hour visits a week that were never missed, and utilized the visits to bring and make food for the children. Mayra also noted that Shannon had had no positive drug screens for nearly a year, but she believed that Shannon was continuing to use drugs because she could not provide a sample every time and appeared "tired" at some visits. Mayra admitted that DHS had failed to follow the court's order to obtain a hair-follicle test and that the hair-follicle test could have cleared up Mayra's concerns.

Mayra also acknowledged that the most recent drug screen, two months prior to the hearing, was negative. Mayra's primary complaints—and bases for termination—were Shannon's lack of housing (Shannon was staying with a friend at the time of the hearing), her utilization of public transportation (which Mayra thought was an issue because of the number of children Shannon has with the youngest two requiring car seats), and Shannon's outstanding legal issues. Shannon testified that DHS had not offered to financially assist her with a van and that because she had suffered a stroke during the case, she preferred to utilize public transportation. As for DHS's allegations of continued drug use, she said she had been tested twice through her employer, for whom she had worked full time for a year, and she passed both screens. She completed most services prior to getting a job, and after completing inpatient drug treatment, her focus was working full time—which she had been doing for a year from 8:00 a.m. to 4:30 p.m. Monday through Friday—and visiting her children two evenings a week.

As to her criminal charges, Shannon acknowledged that she had struggled to juggle all of the court dates in light of job demands and had accumulated several charges for failing to

5

appear. She claimed that she was handling her legal issues and that she was scheduled to make a last appearance the Monday after the termination hearing.

She further acknowledged her failures as a parent that caused her children to enter care but said she was no longer on drugs and was actively working to secure housing, which she believed she would have by August. She had with her a letter from a landlord showing that she had paid a deposit and that the three-bedroom home would be ready within a month.

After the testimony concluded, the court orally terminated Shannon's parental rights and memorialized its findings in a written order dated August 12, 2021. Shannon filed her timely notice of appeal, and this appeal followed.

We will affirm a termination of parental rights where clear and convincing evidence shows (1) that the termination is in the best interest of the juvenile, and (2) at least one of the nine available statutory grounds for termination exists. Ark. Code Ann. § 9-27-341(b)(3) (Supp. 2021); *Chaffin v. Ark. Dep't of Hum. Servs.*, 2015 Ark. App. 522, at 2, 471 S.W.3d 251, 254. In determining whether termination is in the best interest of the juvenile, the circuit court must consider all the factors in the case, including the likelihood that the juvenile will be adopted and the potential harm that would be caused by returning the juvenile to the custody of the parent. *Chaffin*, 2015 Ark. App. 522, at 5, 471 S.W.3d at 255. Adoptability and potential harm, however, are merely two factors to be considered and need not be established by clear and convincing evidence. *Id.* The evidence presented regarding potential harm must be viewed in a forward-looking manner and considered in broad terms, but a circuit court is not required to find that actual harm will result or to affirmatively identify a specific potential harm. *Id.* We will not reverse a termination of parental rights unless the termination findings were clearly

erroneous, meaning that the reviewing court, after reviewing the entire record, is left with a definite and firm conviction that the circuit court below made a mistake. *Id.* at 3, 571 S.W.3d at 254. In deciding whether a finding of the circuit court is clearly erroneous, we give great deference to the superior opportunity of the circuit court to observe the parties and to judge the credibility of witnesses. *Id.*

Shannon challenges only the court's determination that termination of her parental rights was in the children's best interest. She argues that DHS presented insufficient evidence to support the court's potential-harm finding. Importantly, because Shannon does not dispute the court's findings as to grounds, the factual findings supporting those grounds are unchallenged on appeal and may inform the appellate court's review of the court's best-interest finding. *Phillips v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 383, at 16, 585 S.W.3d 703, 711 (affirming the circuit court's best-interest decision where none of the statutory-grounds findings were challenged); *see also Taylor v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 264, at 13 (holding that because the parent never appealed any of the circuit court's findings that return to the parent's custody would be contrary to the child's welfare, those findings were "conclusively established"). The circuit court found that Shannon failed to remedy the conditions that caused removal. Thus, it follows that if the children were returned to her care, they would be at risk of potential harm for the very reason they were originally removed.

Shannon argues that termination was not necessary because "the evidence was uncontroverted that Shannon's issues were not with her parenting, but with the amount of time it has taken for her to recover, especially in her housing, since completing drug treatment [w]as a requirement of her case plan." The court concluded that there was little likelihood that

7

further services would lead to successful reunification, and Shannon has not challenged that finding. Moreover, Shannon's argument is that she simply needed more time and money, but it is well established that in termination cases, the children also need stability and permanency. "The intent behind the termination-of-parental-rights statute is to provide permanency in a child's life when it is not possible to return the child to the family home because it is contrary to the child's health, safety, or welfare, and a return to the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective." *Villaros v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 399, at 5, 500 S.W.3d 763, 766 (citing Ark. Code Ann. § 9-27-341(a)(3)). "A child's need for permanency and stability may override a parent's request for additional time to improve the parent's circumstances. *Wheeler v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 453, at 9, 607 S.W.3d 536, 542.

While this case was pending, Shannon was arrested on April 17, 2021, which was thirty-two months after the children had been removed and after Shannon had the benefit of receiving almost three years of services. Shannon also had not secured appropriate housing at the time of termination; she was living at a friend's home. She had been evicted from previous housing, and DHS had made referrals for housing assistance "multiple times" because it was imperative that Shannon be able to provide a safe and stable home for seven people (herself and six children). While Shannon claimed that she was "currently paying the deposit and the first month's rent now" on a new house, she later said that she had just gone to see it. The court acknowledged that, while Shannon may have lost her previous HUD housing when she went to drug rehab, she never contacted HUD to try to secure housing after that point.

We find no error in the court's conclusion that it was unlikely, considering Shannon's history of instability and noncompliance, that she would successfully use any additional time granted by the court to complete the required steps for reunification. Despite having had three years to work on remedying the issues that caused DHS to remove the children, at the time of termination Shannon still had not obtained adequate housing or resolved her legal issues. We agree that the circuit court's best-interest decision is supported by clear and convincing evidence.

Affirmed.

BARRETT and BROWN, JJ., agree.

*Leah Lanford*, Arkansas Commission for Parent Counsel, for appellant.

*Andrew Firth*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor children.