Cite as 2023 Ark. App. 411

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-23-96

| | |
|---|---|
| JULI LITTLETON AND RICKY LITTLETON | Opinion Delivered September 27, 2023 |
| APPELLANTS | APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT [NO. 66FJV-20-441] |
| V. | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | HONORABLE SHANNON L. BLATT, JUDGE |
| APPELLEES | AFFIRMED |

## STEPHANIE POTTER BARRETT, Judge

Juli Littleton and Ricky Littleton appeal the Sebastian County Circuit Court's termination of their parental rights to their children MC1 (dob 3/24/08), MC2 (dob 5/15/12), and MC3 (dob 8/4/17).[1] Juli's parental rights to her child with Brandon Stanley, MC4 (dob 12/01/15), were also terminated.[2] On appeal, Juli and Ricky do not challenge the grounds for termination but argue only that it was not in the children's best interest for their parental rights to be terminated because there was a less restrictive alternative through placement with a relative. We affirm.

---

[1]Ricky is listed as the putative father of MC3 throughout the case, but MC3's birth certificate naming Ricky as the father was part of the record.

[2]Stanley's parental rights to MC4 were also terminated in this proceeding, but Stanley is not a party to this appeal.

I. *Facts*

Juli and Ricky are divorced. Ricky is serving a twenty-year prison sentence in the Arkansas Department of Correction. Juli is married to Jerry Ibison, and the children lived with her and Ibison. On December 11, 2020, the Arkansas Department of Human Services (DHS) responded to a request for a welfare check. Juli reported to the family-service worker that she believed Ibison was touching MC3 inappropriately; that Ibison was drugging her; and that Ibison had been violent with her, MC1, and MC2. Juli said that Ibison had told her that if she tried to leave him that he would kill her. MC1 and MC2 reported acts of physical abuse by Ibison. The family-service worker noted that Juli would not disclose complete details of the incidents to officers; that she had left MC3 alone with Ibison after accusing Ibison of touching MC3 inappropriately; that there were multiple incidents of domestic violence that had been witnessed by the children, including at least one in which MC1 had been choked, but the police were not called; and Juli tested positive for amphetamines and methamphetamine. Ricky was incarcerated in the Franklin County jail at the time the children were removed from Juli's custody. DHS exercised a seventy-two-hour hold on the children because Juli and Ibison presented an immediate danger to their health and physical well-being. An ex parte emergency order placing the children in the custody of DHS was entered on December 15.

A probable-cause order was entered on January 7, 2021, finding there was probable cause that the conditions causing removal continued, and it was in the children's best

interest to remain in DHS custody. The circuit court ordered DHS to complete an ICPC home study on Ricky's mother, Donna Schrouf, and his sister, Haley Schrouf.

The children were adjudicated dependent-neglected on the basis of parental unfitness in an order filed on February 26. The parties stipulated to the circuit court's finding that the allegations in the petition and affidavit were substantiated by proof.

A review order was filed on June 22; while the goal of the case remained reunification, the circuit court ordered that the children remain in DHS custody due to parental unfitness. The circuit court found that DHS had complied with the case plan and its orders and had made reasonable efforts to provide family services and finalize a permanency plan for the children. It found that Juli was "somewhat compliant" with the case plan in that she had begun services, but Ricky was not compliant—he was incarcerated and had not completed any services. A second review order was filed on October 12. Custody of the children remained with DHS due to parental unfitness, but the goal of the case remained reunification. The circuit court found that DHS had complied with the case plan and its orders and had made reasonable efforts to provide family services and finalize a permanency plan for the children. DHS was again ordered to initiate ICPC home studies on Donna and Haley Schrouf. Juli was again found "somewhat compliant" with the case plan, but Ricky was not compliant due to his incarceration.

A permanency-planning order was filed on February 16, 2022. In this order, the circuit court changed the goal of the case to adoption, with a concurrent goal of reunification, because Ricky and Juli had not made substantial, measurable progress toward

the goals of the case plan. The circuit court noted that Juli was not compliant with the case plan and court orders because she had no housing and no proof of income; although she had completed nurturing-parenting classes, she had not completed the active-parenting-of-teens class and was not compliant with her counseling. The circuit court found Ricky was not compliant with the case plan and court orders, noting that he was still incarcerated, and while he had completed some classes, he had no prospect of being fit for custody any time in the near future. The circuit court noted that the trial home placement with Juli had failed, and it ordered DHS to again submit ICPC home studies on Donna and Haley Schrouf, noting that if the relatives did not wish to participate in the ICPC process, DHS should notify all parties within three days.

DHS filed a petition for termination of parental rights on June 2. Grounds for termination alleged by DHS for both Juli and Ricky were twelve-month failure to remedy; subsequent factors; and aggravated circumstances. DHS also alleged that Ricky was incarcerated in a criminal proceeding for a period of time constituting a substantial period of the children's lives.

A hearing on the petition for termination of parental rights was held on October 7 and 24. An order terminating Juli's and Ricky's parental rights on all bases alleged by DHS was filed on November 16. A memorandum letter from the Texas Department of Family and Protective Services dated October 27, 2022, stated that Donna Schrouf had been

4

identified as a possible placement for the children, that four attempts had been made to contact her to no avail, and that the ICPC foster-home inquiry would be closed.[3]

## II. *Standard of Review*

Termination of parental rights is an extreme remedy and in derogation of a parent's natural rights; however, parental rights will not be enforced to the detriment or destruction of the health and well-being of the children. *Collier v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 100, 641 S.W.3d 67. Termination-of-parental-rights cases are reviewed de novo. *Swanson v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 355. Termination of parental rights is a two-step process requiring a determination that the parent is unfit and that termination is in the best interest of the child. *Id.* The first step requires proof of one or more statutory grounds for termination; the second step, the best-interest analysis, includes consideration of the likelihood that the child will be adopted and of the potential harm cause by returning custody of the child to the parent. *Id.*

The burden of proof is clear and convincing evidence, which is the degree of proof that will produce in the finder of fact a firm conviction regarding the allegation sought to be established. *Id.* We will not reverse the circuit court's ruling unless its findings are clearly erroneous. *Isom v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 159. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In determining whether a finding is clearly erroneous, due deference is given to the circuit

---

[3]This was the second ICPC study requested on Donna in Texas.

court's opportunity to judge the credibility of witnesses. *Gascot v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 57.

### III. *Discussion*

Ricky and Juli make the same argument on appeal—the circuit court erred in terminating their parental rights because it was not in the children's best interest. Specifically, they contend the circuit court was clearly erroneous because there was a less restrictive alternative—placement with a relative—than termination. They rely on this court's decisions in *Borah v. Arkansas Department of Human Services*, 2020 Ark. App. 491, 612 S.W.3d 749, and *Clark v. Arkansas Department of Human Services*, 2019 Ark. App. 223, 575 S.W.3d 578, to support their contention that the circuit court erred in terminating their parental rights instead of considering placement with Ricky's mother, Donna Schrouf.[4]

In determining whether termination is in the best interest of the children, the circuit court must consider the entire history of the case and all relevant factors in the case, including the likelihood of adoption and the potential harm that would be cause by returning the children to the custody of the parents. *Goforth v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 233, 666 S.W.3d 138. Adoptability and potential harm are merely two factors to be considered and need not be established by clear and convincing evidence; other considerations may include the preservation of the children's relationship with a

---

[4]While the circuit court also ordered DHS to obtain an ICPC home study on Ricky's sister, Haley Schrouf, there is no evidence this was done. However, neither Ricky nor Juli argues on appeal that this was erroneous; rather, they focus on the lack of an ICPC home study for Donna only.

6

grandparent, the loss of child support from a parent, whether a less drastic measure could be employed, whether continued parental contact would be beneficial to the children if or when the children are living with a relative, and whether the children are living in continued uncertainty. *Id.* (citing *Phillips v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 383, 585 S.W.3d 703).

DHS argues, citing *Martin v. Arkansas Department of Human Services*, 2022 Ark. App. 508, 657 S.W.3d 881, and *Coulter v. Arkansas Department of Human Services*, 2021 Ark. App. 398, 636 S.W.3d 377, that Ricky and Juli's least-restrictive-alternative arguments are not preserved because they failed to designate the permanency-planning order and hearing in their notices of appeal. We disagree. In those cases, the goal of the case was changed to adoption with no concurrent goal at the permanency-planning hearing; this court held that in order to make an argument regarding the least restrictive placement, the appellants had to have designated the permanency-planning order and hearing because that was where the goal of the case was changed to adoption. This case is more analogous to *Clark*, *supra*, with regard to the preservation issue. In *Clark*, the circuit court set concurrent goals at the permanency-planning hearing—reunification with a concurrent goal of custody and adoption. Here, the circuit court also set concurrent goals of adoption and reunification in the permanency-planning order, and it again ordered DHS to submit ICPC home studies on Donna and Haley Schrouf. The *Clark* court held that there were two permanency paths going into the termination hearing, and Clark was "not procedurally barred from arguing that termination was not in the children's best interest because an alternative and satisfactory

relative placement was available for the circuit court to consider when it ordered the termination." 2019 Ark. App. 223, at 5, 575 S.W.3d at 581. Because there were two concurrent goals available to the court going into the termination hearing, we hold that Ricky and Juli's arguments regarding a least restrictive placement is not procedurally barred.

Ricky and Juli assert that the circuit court was clearly erroneous in proceeding with termination when the issue of a less restrictive placement with Donna Schrouf was still outstanding. A home study on Donna's home was initiated in 2021, but a memo from the Texas Department of Family and Protective Services dated May 4, 2021, stated that the case was closed because Donna was not moving forward with foster-care licensure at that time. The reason given was that the children were to begin having weekend visitation with Juli, and Donna was not willing to travel back and forth to Arkansas for visitation.

Ricky and Juli fault DHS for not moving more quickly for a second ICPC home study—which was ordered by the circuit court in the second review order and again in the permanency-planning order—until September 2022, when the termination hearing was scheduled for October 2022. They contend that if DHS had timely complied with the orders for a home study on Donna's home, it could have been ready for the circuit court's consideration at the termination hearing. However, a second memorandum from the Texas Department of Family and Protective Services dated October 27, 2022 (after the termination hearing was held but before the termination order was issued), was filed of record in the case, and it noted that the second ICPC foster-home inquiry was being closed because

Donna Schrouf failed to respond to phone calls, e-mails, and letters regarding the home study.

The family-service worker was questioned at the termination hearing about the delay in seeking a second home study on Donna's home. She testified that DHS was missing information and was unable to reach Donna to obtain it, resulting in the delay requesting a second home study. Donna admitted at the termination hearing that she had not attempted to contact DHS for nine or ten months but that DHS had contacted her several months before the termination hearing, and she told them that she was willing to take the children until "this got straightened out." She claimed that DHS had never requested additional information from her. Donna testified that she has a relationship with her grandchildren; however, MC1 testified that she did not want to live with her grandmother because she was afraid that her parents would try to take her from Donna. Donna testified that she would be willing to adopt all four children, but when she was asked if she was willing to keep them away from Ricky until the children were adults, she stated that she did not know how she would do that if Ricky was living close to her, and she could not say for sure that he would not be at her house at some time.

In the termination order, the circuit court noted appellants' arguments regarding *Clark* and *Borah* but distinguished those cases from the present case. It found that in *Clark*, there was an approved home study, and there was not an approved home study in the present case. Although Ricky and Juli assert that DHS should bear the blame for the failure to obtain a timely home study, there was conflicting evidence as to why it was delayed, with DHS

9

claiming that it needed more information and was unable to contact Donna, and Donna stating that DHS never contacted her. Witness credibility is for the finder of fact. *Gascot, supra*. It appears that the circuit court did not fault DHS for the late submission of the second home study. The circuit court found that in *Borah*, the relative had been repeatedly reaching out to the department, which was not the case here. In both of those cases, there were strong family bonds, which were not present here.

In *Best v. Arkansas Department of Human Services*, 2020 Ark. App. 485, at 23–24, 611 S.W.3d 690, 704 (citations omitted), this court held that

> a circuit court is permitted to set termination as a goal even when a relative is available and requests custody. This is because the Juvenile Code lists permanency goals in order of preference, prioritizing a plan for termination and adoption unless the juvenile is already being cared for by a relative, the relative has made a long-term commitment to the child, and termination of parental rights is not in the child's best interest. Our decision in *Clark* did not change this. In *Clark*, we reversed the termination order acknowledging the statutory preference that a juvenile be placed with a relative in dependency-neglect cases. Additionally, we said that each termination-of-parental-rights case is decided on a case-by-case basis, and we held that the circuit court's decision to forgo relative placement as a permanency goal for the children in *Clark* was clearly erroneous given the facts.

Furthermore, the relative preference outlined by the legislature must be balanced with the individual facts of each case. *Knox v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 203. When the parent demonstrates stability and a reasonable hope for reunification, there is no harm in waiting a little longer before terminating parental rights; but when that stability and reasonable hope for reunification are not present, there is no reason to further delay permanency through termination and adoption. *Id.*

In the present case, none of the children were being cared for by Donna Schrouf, and it was questionable whether she could make a long-term commitment to the children. Additionally, one of the grounds found by the circuit court for termination was aggravated circumstances because there was little likelihood that services would result in successful reunification. Neither Juli nor Ricky appealed that determination. As this court held in *Knox*, there was no reason to delay permanency for the children through termination and adoption if there was no reasonable hope for reunification. We hold that the circuit court's decision to terminate Ricky's and Juli's parental rights was not clearly erroneous.

Affirmed.

THYER and WOOD, JJ., agree.

*James & Streit*, by: *Jonathan R. Streit*, for separate appellant Juli Littleton.

*Jennifer Oyler Olson*, Arkansas Commission for Parent Counsel, for separate appellant Ricky Littleton.

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor children.