Cite as 2023 Ark. App. 559

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-23-433

SAMUEL "TRAE" JONES

APPELLANT

V.

ARKANSAS DEPARTMENT OF
HUMAN SERVICES AND MINOR
CHILD

APPELLEES

Opinion Delivered December 6, 2023

APPEAL FROM THE VAN BUREN
COUNTY CIRCUIT COURT
[NO. 71JV-21-6]

HONORABLE SUSAN WEAVER,
JUDGE

AFFIRMED

**N. MARK KLAPPENBACH, Judge**

Appellant Samuel "Trae" Jones appeals the March 2023 circuit court order that

terminated his parental rights to his son born in March 2021.[1] Samuel argues that the circuit

court clearly erred in finding that the Arkansas Department of Human Services (DHS)

proved statutory grounds against him and that it was in his son's best interest to terminate

his parental rights. We affirm.

This child's older brother, who was born in March 2020, tested positive for

amphetamine and THC at his birth, and he was placed into foster care with a relative in

October 2020. DHS took emergency custody of the child involved in the current case in

March 2021 because his mother, Haley Cornelius, tested positive for methamphetamine.

---

[1]The circuit court terminated the parental rights of the biological mother, Haley
Cornelius, in May 2022. Haley is not a party to this appeal.

Haley admitted that she had used methamphetamine on and off since 2017, and she told a DHS investigator that Samuel also used methamphetamine. Samuel was not married to Haley nor did they live together, but they maintained some type of relationship. Samuel was on parole for drug-related charges and had admitted using methamphetamine two days before their son was born. DHS was ordered to provide Samuel services and for Samuel to cooperate with those services.

After a hearing in April 2021, the circuit court found Samuel noncompliant. He had not completed parenting classes, submitted to home visits, visited his son, or gained employment. The child was adjudicated dependent-neglected in May 2021 due to Haley's drug use. Both parents were ordered to complete their case plan designed to help them become sober, stable parents with appropriate housing and income to support their son. The parents were permitted four hours a week supervised visitation. Also in May 2021, Samuel was arrested and jailed on drug-possession charges.

In July 2021, the circuit court found that Samuel is the child's biological father by DNA test results submitted to the court. However, Samuel remained in jail until February 2022 when he went to drug rehabilitation, which was a condition of his criminal case. Until May 2022, Samuel's supervised visitation had been sporadic. However, by May 2022, Samuel had completed rehabilitation and had employment. The circuit court determined that Samuel should be given additional time to try to unify with his son. This gave Samuel several more months to prepare for custody of his son.

Samuel was ordered to abide the case plan and find stable, appropriate housing. DHS scheduled four-hour supervised visits on Saturdays to accommodate Samuel's work schedule, but Samuel did not take full advantage of those opportunities to visit. His stated reasons for not coming for visits ranged from helping his mother pack, to forgetting the appointment, to visiting other family members. He sometimes left his four-hour visits early. Samuel said he was having truck issues at one point, so he was offered to visit via Zoom, but he did not want to participate. When Samuel did visit his son, he was advised to wash his hands and change his clothing because his son was sensitive to second-hand smoke and other air pollutants. Irritants would create an asthma-type breathing problem, and the child would have to use an inhaler. Samuel did abide the request to change clothes and wash his hands, given that Samuel smokes both marijuana and cigarettes, although Samuel was not happy about being asked. Samuel was offered additional visitation time, but he told a DHS worker that he "enjoys his four hours once a week and that's about all he's willing to do."

Samuel had completed inpatient rehabilitation and apparently was successful in keeping his methamphetamine addiction at bay. Samuel, however, continued to smoke marijuana; he did not have a medical prescription to use marijuana. Samuel's hair-follicle testing between May and October 2022 showed an increase in the amount of THC.[2] He

---

[2]In September 2022, Haley (whose parental rights to this child had already been terminated) had another baby boy with Samuel, but the child tested positive for THC at birth and was removed from her custody. Samuel was not given custody of that child. That child is the subject of a separate DHS case.

3

submitted to six outpatient therapy sessions between September 2022 and January 2023. In therapy, he admitted having used methamphetamine, alcohol, and marijuana in the past, but he said he continued to use only marijuana because it helped with his anxiety, depression, and PTSD.

The child remained in the same foster home and was receiving occupational and speech therapy. The child was monitored for his breathing disorder, but the child was making progress, and the DHS worker testified that there were no barriers to this child being adopted, especially at such a young age.

Samuel maintained gainful employment since May 2022, but he did not obtain stable housing despite being reminded that stable housing would be important in achieving custody. In October 2022, Samuel told DHS that he had a place to live but that it was not ready. Samuel was staying with his brother in an apartment in Conway or staying with his mother in Greers Ferry, but he was working on and checking on the other place in Greers Ferry.

The termination hearing was conducted over three days in January and February 2023. It was at the termination hearing that Samuel produced a lease dating back to September 2022, but he said it was still not ready for his son because he was building his son a bed. Although Samuel knew that his son has breathing issues, Samuel continued to smoke marijuana and cigarettes. The circuit court noted that Samuel did not take advantage of extra opportunities to visit with his son. The circuit court found that giving more time or services

4

to Samuel would not change the results because Samuel manifested incapacity and indifference to making himself ready to take custody of his son.

The circuit court also found that DHS had proved that it was in this child's best interest to terminate his father's parental rights. The circuit court considered the likelihood that this child would be adopted, pointing to the testimony that there were no known barriers to this child being adopted, and found the DHS witnesses credible in their statements that Samuel's sobriety was a continued concern, that Samuel maintained a relationship with the biological mother who was not believed to be sober, that Samuel displayed lack of interest in additional visitation, and that Samuel failed to obtain stable housing.

In sum, the circuit court found that DHS had proved by clear and convincing evidence two statutory grounds for termination (the noncustodial parent's one year failure-to-remedy ground and the subsequent-other-issues ground)[3] and that it was in the child's best interest to terminate Samuel's parental rights. The circuit court entered a detailed order, and this appeal followed.

Termination of parental rights is a two-step process requiring a determination that the parent is unfit and that termination is in the best interest of the child. *Gilbert v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 256, 599 S.W.3d 725. The first step requires proof of one or more statutory grounds for termination; the second step, the best-interest analysis,

---

[3]Noncustodial parent's failure to remedy (Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(*b*)) (Supp. 2023); subsequent other issues (Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)(*a*)).

includes consideration of the likelihood that the juvenile will be adopted and of the potential harm caused by returning custody of the child to the parent. *Id.* Statutory grounds and a best-interest finding must be proved by clear and convincing evidence, which is the degree of proof that will produce in the fact-finder a firm conviction regarding the allegation sought to be established. *Id.* We review termination-of-parental-rights cases de novo. *Id.* The appellate inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.*

Samuel first argues that neither of the statutory grounds were proved against him. Only one ground is necessary to terminate parental rights. *Henry v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 63, 639 S.W.3d 924. We focus on the subsequent-other-issues ground wherein termination may be ordered when other factors or issues arise subsequent to the filing of the original petition for dependency-neglect that demonstrate that placement of the child in the parent's custody is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the juvenile in the custody of the parent.

Samuel asserts that the circuit court erroneously relied on evidence outside the specific allegations made by DHS to support its subsequent-other-issues finding. We disagree with that assertion. DHS alleged, and the evidence supported, that Samuel displayed a level

6

of apathy about spending time with his son, cutting visits short and refusing extra time with him. DHS alleged, and the evidence supported, that Samuel had reportedly obtained housing in the fall of 2022, but it was "not ready" at the termination stage. Samuel did not permit DHS to view his residence until the night before the termination hearing, and he did not produce a lease until the day of the hearing. His own testimony demonstrated that he was not yet prepared to have his son in his custody because he had not finished preparing a bed for his infant son. A stable home is one of a child's most basic needs, and that cannot be ignored. *See Selsor v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 182, 516 S.W.3d 314. We find no clear error in the circuit court's determination that DHS proved the subsequent-other-issues ground. Furthermore, we are not persuaded that Samuel was unaware of what he needed to do to gain custody of his son, and we are not persuaded that he was not on notice of the basis of the statutory grounds alleged against him.

Samuel next argues that the circuit court clearly erred in finding that termination of his parental rights was in his son's best interest. A circuit court is required to find that termination of parental rights is in the child's best interest, which requires consideration of two factors: potential harm to the child if custody is given to the parent and the likelihood that the child will be adopted. Adoptability and potential harm are merely factors to be considered; they are not elements of the cause of action and need not be established by clear and convincing evidence. *Alexander v. Ark. Dep't of Hum. Servs.*, 2021 Ark. App. 345, 634 S.W.3d 807. Rather, after considering all the factors, the circuit court must find by clear

and convincing evidence that termination of parental rights is in the best interest of the child. *Id.*

Samuel does not challenge the finding that it was likely that his son would be adopted if termination of parental rights took place. His argument focuses on the potential-harm factor and the overall best-interest analysis. A potential-harm analysis must be conducted in broad terms, taking into consideration the harm to the child's health and safety that might occur from continued contact with the parent. *Cole v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 481, 611 S.W.3d 218. There is no requirement that the circuit court find that actual harm would result or identify the potential harm. *Id.* A child's need for permanency and stability may override a parent's request for additional time to improve the parent's circumstances. *Tate v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 176, 643 S.W.3d 850.

A de novo review of this record reveals that Samuel admittedly was not ready to have his son come home because his residence was not yet suitable for his child; that Samuel was a cigarette and marijuana smoker with no apparent intention of quitting, despite his son's sensitivity to airborne irritants; and that Samuel was satisfied with only four hours of visitation each week with his son. The circuit court was convinced that, having given Samuel nearly two years to become the parent this child needed, the child's best interest was served by terminating Samuel's parental rights. We are not left with a definite and firm conviction that the circuit court erred in this finding.

We have conducted a de novo review of this record, giving due regard to the credibility assessments made by the circuit court and the weight it decided to give the

evidence before it. The circuit court was not required to credit Samuel's eleventh-hour effort to show he could provide his child stable housing. *Myers v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 46, 660 S.W.3d 357. Samuel essentially asks this court to reweigh the evidence. We will not reweigh the evidence on appeal, and credibility determinations are left to the circuit court. *Miller v. Ark. Dep't of Hum. Servs.*, 2021 Ark. App. 280, 626 S.W.3d 136. We hold that the circuit court did not clearly err in terminating Samuel's parental rights.

Affirmed.

HARRISON, C.J., and BARRETT, J., agree.

*Leah Lanford*, Arkansas Commission for Parent Counsel, for appellant.

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor child.