Cite as 2024 Ark. App. 4

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-23-479

| | |
|---|---|
| ANDRELA MOORE AND DAMIEN GARNER | Opinion Delivered January 10, 2024 |
| APPELLANTS | APPEAL FROM THE HOT SPRING COUNTY CIRCUIT COURT |
| V. | [NO. 30JV-20-69] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD | HONORABLE CHRIS E WILLIAMS, JUDGE |
| APPELLEES | AFFIRMED |

**N. MARK KLAPPENBACH, Judge**

Appellants, Andrela Moore and Damien Garner, separately appeal the May 2023 circuit court order that terminated their parental rights to their daughter born in December 2019. Both parents challenge the circuit court's finding that termination of parental rights was in the child's best interest. We affirm.

The present case began as a protective-services case in March 2020, although the Arkansas Department of Human Services (DHS) had been involved with this family on and off for several years.[1] Moore and Garner were arguing, and the situation continued to escalate, resulting in three separate visits from the police. On the third visit, both parents

---

[1] This child's older sister, born in 2013, was placed in her maternal grandmother's permanent custody in 2018. In that case, Moore ultimately agreed with DHS that it would be better for the older child to live with the grandmother in Malvern.

were arrested, and both tested positive for THC, so a family member took the child. After the parents were released from jail, the discord between the parents continued, although they ultimately ended up moving back to their apartment in Malvern.

The child was taken into emergency DHS custody in October 2020. A family-service worker made a random visit and found that the chaos was in full swing with Moore, Garner, and other family members screaming back and forth at each other. Moore had posted on Facebook live the previous night showing herself, Garner, her sister (who was shown smoking marijuana), and the child in the car; the child was improperly placed in a car seat. Moore said that she knew her child was high because she (Moore) was high. A child-abuse hotline report had been made alleging drug use, heavy drinking, and domestic violence around the child. Several police officers arrived to attempt to deescalate the situation, at which time the family-service worker took the child into DHS custody. Both parents tested positive for THC. Garner had not been taking his medication for bipolar disorder. Due to the substance abuse, the emotional instability displayed by both parents, and the family history with DHS, the child was taken into DHS custody.

In December 2020, the circuit court found the child dependent-neglected due to neglect and parental unfitness. The child's hair-follicle test results had shown the presence of methamphetamine, amphetamine, cocaine, and THC. The parents continued to be in a volatile relationship, and Moore had her own turmoil, getting into fights with the same females since 2009. The parents were ordered to work with DHS's services, including anger management, counseling, relationship counseling, drug assessments, psychological

assessments, and drug screening. The case plan required the parents to obtain and maintain employment, complete substance-abuse treatment, allow home visits, maintain a proper residence, take parenting classes, and attend visitation.

The circuit court conducted six review hearings between March 2021 and June 2022. The parents were intermittently compliant with the case plan but could not maintain progress. Garner had difficulty controlling his outbursts at supervised visitation, and he was ultimately banned from the DHS building. By October 2021, the circuit court was willing to entertain a trial placement with the parents because they had been compliant with the case plan. By December 2021, however, the child was taken back into DHS custody because the parents continued to have altercations, and they continued to abuse illegal substances. Garner had become a confidential informant for law enforcement, which also presented possible danger for the child. The child was allowed to be placed with Moore if she stayed in the inpatient substance-abuse treatment center and complied with that program, but that did not last; the child returned to DHS custody. Garner's mental health and outbursts (attributed to his failure to take his psychiatric medications) continued to be a concern, and "the parents [fed] off each other."

By June 2022, the parents were found to be in partial compliance; both had attended visits, attended counseling, maintained stable housing, and submitted to drug tests. However, Moore was unemployed and admitted using an illegal substance. Garner tested positive for methamphetamine, amphetamine, and THC. The circuit court urged Moore to

3

apply for jobs and stressed that the parents were giving the court no "wiggle room," and if they could not stop using drugs, then termination would follow.

At a November 2022 permanency-planning hearing, DHS asked that guardianship be considered, but the circuit court rejected that goal because "the parents think they will control the visits, the parents are sometimes out of control and [will] not leave the guardian alone." A permanency-planning order was filed, reciting the goal as termination of parental rights and adoption. DHS filed a petition to terminate parental rights in December 2022, alleging five statutory grounds against them and that it was in this child's best interest that parental rights be terminated.[2] In March 2023, the matter was continued because Garner was getting inpatient psychiatric care.

The petition was heard in April 2023, approximately two and a half years after the child had been taken into DHS custody. The DHS caseworker testified that, even though Moore told her she was "done" with Garner, she repeatedly got back together with him. The caseworker also testified that, even though they had been provided counseling, anger-management classes, and substance-abuse treatment, the parents did not benefit from those services. The parents missed multiple opportunities to visit with their daughter. Police were repeatedly called to the parents' residence to break up fights.

_____

[2]The statutory grounds recited from Ark. Code Ann. § 9-27-341(b) (Supp. 2023) included (1) out of parental custody and failure to remedy (against only Moore); (2) out of noncustodial parent custody and failure to remedy (against only Garner); (3) willful failure to provide support or maintain meaningful contact; (4) other factors arising subsequent to the dependency-neglect petition showing incapacity or indifference; and (5) aggravated circumstances, little likelihood of successful reunification.

Moore testified that she did not have a job, transportation, or a home of her own; she had left Garner about a month earlier and was living with a friend in Hot Springs. Moore admitted she had recently used marijuana and cocaine, and she said Garner was using methamphetamine and marijuana when she left him the last time. Moore admitted that she did not yet "have it together" but said, "I'm going to get it together." Garner did not appear at the hearing; Garner's attorney did not know where he was. Both parents had criminal cases pending, and the circuit court was concerned about Garner's unstable mental health.

The child was doing well in her current placement with her maternal great aunt, who said she would consider adoption or guardianship "only if I have to be." The aunt believed that Moore's two girls should be together. The DHS adoption specialist found 301 potential adoptive matches for this child and deemed her "highly adoptable."

The circuit court found that Garner "terrifies anybody he's around" and that Moore went right back to drugs after being treated for drug addiction. The circuit court added that Moore had no job, no income, no home of her own, no stability, and no parental capability, and that this was too volatile a situation to make the child wait any longer for permanency.

The circuit court found it to be in this child's best interest to terminate parental rights, having considered the likelihood that she would be adopted and the potential harm to her if either parent was given custody. The circuit court referred to all the statutory grounds that were alleged and proved by clear and convincing evidence as the basis for its conclusion on potential harm. This appeal followed.

Termination of parental rights is a two-step process requiring a determination that the parent is unfit and that termination is in the best interest of the child. *Gilbert v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 256, 599 S.W.3d 725. The first step requires proof of one or more statutory grounds for termination; the second step, the best-interest analysis, includes consideration of the likelihood that the juvenile will be adopted and of the potential harm caused by returning custody of the child to the parent. *Id.* Statutory grounds and a best-interest finding must be proved by clear and convincing evidence. *Id.* We review termination-of-parental-rights cases de novo. *Id.* The appellate inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.*

Neither parent challenges any of the statutory grounds found against them. Neither parent challenges the finding that it is likely the child would be adopted if termination of parental rights took place.

Moore argues on appeal that the evidence is insufficient as to the potential-harm factor and the overall best-interest decision. Specifically, Moore contends that she worked the case plan the best she could and that flawless performance is not required. Moore asserts that the problems arose from being in a bad relationship with Garner, but that was over. Moore adds that she loves her daughter and that severing that familial bond is not favored.

A potential-harm analysis must be conducted in broad terms, taking into consideration the harm to the child's health and safety that might occur from continued contact with the parent. *Cole v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 481, 611 S.W.3d 218. There is no requirement that the circuit court find actual harm would result or identify the potential harm. *Id.* The same evidence supporting the statutory grounds for termination may also support the circuit court's best-interest finding under the potential-harm prong. *Id.* A child's need for permanency and stability may override a parent's request for additional time to improve the parent's circumstances. *Tate v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 176, 643 S.W.3d 850.

This DHS case had lingered for more than two years, during which Moore completed many of the services provided by DHS. However, Moore did not glean the benefits of those services. Even full compliance with the case plan is not determinative; the issue is whether the parent has become a stable, safe parent able to care for his or her child. *Best v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 485, 611 S.W.3d 690. And, a parent's past behavior is often a good indicator of future behavior. *Id.*

Moore went back to using drugs. Moore had a volatile on-and-off relationship with Garner. Moore missed many visits with her daughter. Moore failed to acquire her own stable, appropriate housing. Moore had left her abusive, volatile relationship only a month before the termination hearing. Moore failed to acquire employment sufficient to care for herself and her daughter. Moore acknowledged in her testimony that she was not yet ready to take custody of her daughter, although she wanted to have her back. On this evidence,

7

we cannot say that the circuit court clearly erred in finding that it was in this child's best interest to terminate Moore's parental rights.

Garner asserts that termination of his parental rights must be reversed because permanency could have been achieved for his daughter via a guardianship with her maternal great aunt, the relative who had taken care of his daughter most of her life. Stated differently, Garner argues that the circuit court clearly erred because a measure less drastic than termination could have better served his daughter. Garner adds that termination of parental rights is harmful because it severs his daughter's relationship with her older sister.

We first note that this argument is not preserved for appellate review. Garner did not designate the permanency-planning order in his notice of appeal, nor did he bring up the permanency-planning hearing transcript for appellate review. In that hearing and resulting order, the circuit court changed the goal of this case solely to adoption, specifically rejecting guardianship as a concurrent goal. *See Flowers v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 229, 666 S.W.3d 128; *Martin v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 508, 657 S.W.3d 881.

In any event, we have held that a circuit court is permitted to set termination as a goal even when a relative is available and requests custody. *Best*, *supra*. The Juvenile Code lists permanency goals in order of preference, prioritizing a plan for termination and adoption unless the juvenile is already being cared for by a relative, the relative has made a long-term commitment to the child, and termination of parental rights is not in the child's best interest.

*Id.* Our decision in *Clark v. Arkansas Department of Human Services*, 2019 Ark. App. 223, 575 S.W.3d 578, did not change this. *Id.*

The relative preference outlined by the legislature must be balanced with the individual facts of each case. *Littleton v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 411, 675 S.W.3d 893. When the parent demonstrates stability and a reasonable hope for reunification, there is no harm in waiting a little longer before terminating parental rights; but when that stability and reasonable hope for reunification are not present, there is no reason to further delay permanency through termination and adoption. *Id.*

In this case, the child was placed for much of the time with her maternal great aunt but always remained in DHS custody. Garner failed to appear at the termination hearing, his whereabouts unknown; he failed to abstain from drug abuse; he continued to abuse Moore; and he preferred his infrequent supervised visits with his child to be conducted via Zoom instead of in person. Garner failed to appeal the statutory grounds found against him, including the ground that deems it unlikely that additional services will result in a successful reunification. Because there is no reasonable expectation that this child would be able to reunify with her father, we hold that the circuit court did not clearly err in choosing termination over guardianship. Furthermore, we reject Garner's argument that termination of his parental rights is clearly erroneous because it severs a sibling relationship. Garner did not appear at the termination hearing, much less raise any argument about severing the familial relationship between sisters. This argument is not preserved for appellate review. *Dejarnette v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 410, 654 S.W.3d 83.

In sum, both parents essentially ask this court to reweigh the evidence. We will not reweigh the evidence on appeal, and credibility determinations are left to the circuit court. *Miller v. Ark. Dep't of Hum. Servs.*, 2021 Ark. App. 280, 626 S.W.3d 136. Although parents have a fundamental constitutional right to direct the care and upbringing of their children, the State of Arkansas has an equally compelling interest in the protection of its children. *Porter v. Ark. Dep't of Hum. Servs.*, 374 Ark. 177, 286 S.W.3d 686 (2008). We hold that the circuit court did not clearly err in terminating both parents' parental rights.

Affirmed.

VIRDEN and WOOD, JJ., agree.

*Gregory Crain*, for separate appellant Andrela Moore.

*James & Streit*, by: *Jonathan R. Streit*, for separate appellant Damien Garner.

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor child.